UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 21-87 (TJK) |
| MICHAEL SPARKS, | |
| *Defendant*. | |

### MEMORANDUM ORDER

Michael Sparks moves to sever his trial from that of his co-defendant, Joseph Howe. ECF No. 52. The government opposes. ECF No. 56. Because Sparks has not identified a risk of prejudice sufficient to warrant the drastic step of severance, the Court will deny the motion.

\*   \*   \*

Sparks seeks severance from Howe under Rule 14(a), which provides relief from joinder in certain limited circumstances.[1] That rule says that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). The Supreme Court has instructed that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from

---

[1] Under Federal Rule of Criminal Procedure 8(b), the government may properly join defendants in a single indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately." Fed. R. Crim. P. 8(b). But "[a]ll defendants need not be charged in each count." *Id.* Sparks does not challenge the propriety of the government's joining him with Howe under this rule.

making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). And "[t]he defendant carries the burden of demonstrating prejudice resulting from a failure to sever." *United States v. Gooch*, 665 F.3d 1318, 1326 (D.C. Cir. 2012).

Even if a defendant satisfies his burden to show some risk of prejudice, the D.C. Circuit has explained that Rule 14(a) does not *require* severance. *See Gooch*, 665 F.3d at 1326. The rule gives district courts "significant flexibility to determine how to remedy any potential risk of prejudice posed by the joinder of multiple defendants in a single trial." *United States v. Moore*, 651 F.3d 30, 95 (D.C. Cir. 2011). Indeed, courts should grant severance only "sparingly because of the strong interests favoring joint trials." *United States v. Celis*, 608 F.3d 818, 844 (D.C. Cir. 2010) (quotation omitted). Thus, "[w]hen the risk of prejudice is high, . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539 (citation omitted).

*      *      *

Sparks moves to sever his trial from Howe's. He does not identify any specific trial right that would be compromised by a joint trial with Howe. Rather, the thrust of his argument is that joinder will prejudice him because "[t]he jury will inevitably paint Mr. Sparks with the same brush with which the government paints Mr. Howe." ECF No. 52 at 2. Sparks argues that he should not be joined with Howe because—unlike Howe—he "committed no acts of violence, used or carried no deadly or dangerous weapons, committed no physical assaults, and engaged in no destruction of government property." *Id.*

The Court is unpersuaded that severance is warranted. The disparity in the evidence and the charges against the defendants is not as dramatic as Sparks suggests, and there is no reason to suspect that any risk of prejudice cannot be addressed by a limiting instruction.

The government proffers that Sparks and Howe were together for most of the events relevant to the charged offenses. The two, who were co-workers, allegedly drove together from Kentucky to Washington, D.C. before January 6, 2021. *See* ECF No. 56 at 1–2. After attending the "stop the steal" rally on the Ellipse, they walked together to the Capitol grounds, each wearing a tactical vest. *Id.* at 2–3. Once there, they navigated past lines of Capitol police officers and bike-rack barriers to approach the building together, speaking to each other along the way. *Id.* at 3–7. Eventually, they made it to the Capitol's upper west terrace and Senate wing door. *Id.* at 7. Sparks then allegedly climbed inside through a broken window, with Howe following through the Senate wing door shortly after. *Id.* at 7–9. Once inside, the two separated, but each allegedly helped foment chaos and mayhem inside the building. *See id.* at 9–10. After leaving, the two regrouped for the evening and drove back to Kentucky together the next day. *Id.* at 11.

Based on this conduct, the government charged Sparks and Howe together in the Second Superseding Indictment's lead count of obstruction of an official proceeding under 18 U.S.C. § 1512(c)(2). ECF No. 39 at 2. This count carries with it the longest potential sentence of all the counts in the Second Superseding Indictment. The government also charged them jointly in Counts 12 and 14 with, respectively, disorderly conduct in a Capitol building and parading, demonstrating, or picketing in a Capitol building. *Id.* at 6–7.

For some of the other counts, Sparks and Howe are charged with similar (if not the same) crimes for committing similar (if not the same) acts, even if they are not charged jointly. For instance, in Count 2 against Sparks and Count 3 against Howe, each of them is charged with civil disorder, a felony. ECF No. 39 at 2–3. In Count 7 against Howe and Count 10 against Sparks, they are charged with entering and remaining in a restricted building or grounds. *Id.* at 4–5. And in Count 8 against Howe and Count 11 against Sparks, they are charged with disorderly and

disruptive conduct in a restricted building or grounds. *Id.* at 4–6. The only difference is that the government alleges Howe committed Counts 7 and 8 with a deadly or dangerous weapon, in this case a fire extinguisher and a baton, elevating them to felonies instead of misdemeanors. *Id.* at 4–5.

Given the considerable overlap in the charges against Sparks and Howe, the government plans to prove its case against them with much of the same witness testimony, videos, photographs, and text-message and social-media communications. ECF No. 56 at 12–14, 19. The government represents that common witnesses will include persons who traveled to and from Washington, D.C. with them, as well as law-enforcement witnesses who will describe the events that unfolded in areas of the Capitol where they were present and others who searched their digital media. *Id.*

In circumstances such as these, where "the respective charges require presentation of much of the same evidence, testimony of the same witnesses, and involve two defendants who are charged, *inter alia*, with participating in the same illegal acts," the "general policy favoring joint trials" weighs against severance. *United States v. Sutton*, 801 F.2d 1346, 1365 (D.C. Cir. 1986). Courts should also avoid severance when joint trials would "conserve the time of courts, prosecutors, witnesses, and jurors." *Celis*, 608 F.3d at 844 (quotation omitted). And the Supreme Court generally instructs that joint trials "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro*, 506 U.S. at 537 (quotation omitted). Here, all these factors weigh heavily against severance.

Of course, Sparks is right that he and Howe are not alleged to have acted identically on January 6, and in theory, the differences in the evidence against them could support severance. In their ascent to enter the Capitol, Howe allegedly pushed a police officer, grabbed a riot shield from another officer, and used both a police baton and an apparent pepper-spray cannister against

4

officers. ECF No. 56 at 3–4, 6. Directly outside the building, the government also alleges Howe kicked the Senate wing door. *Id.* at 7. And once inside, after he separated from Sparks, Howe allegedly entered the building's crypt, where he set off a fire extinguisher, causing chaos to ensue. *Id.* at 10–11. Thus, Howe is charged with several offenses that Sparks is not. In Counts 4 and 5, Howe is charged with assaulting, resisting, or impeding certain officers, for both grabbing the riot shield and shoving an officer. ECF No. 39 at 3; *see also* ECF No. 56 at 12. And in Counts 6, 9, and 13, he is charged with destruction of government property, engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon, and committing an act of physical violence within the Capitol grounds or buildings. ECF No. 39 at 4–6.

Sparks's main concern is that the evidence against Howe related to these separate alleged acts and charged offenses "will so inflame and enrage the jury that it will be impossible for it to compartmentalize the proof against Mr. Howe and exclude it totally from their deliberations regarding Mr. Sparks." ECF No. 52 at 2. This, Sparks says, will cause a "prejudicial spillover effect" on his defense. *Id.* at 3.

These concerns do not warrant severance here for several reasons. First, the difference in the evidence against Sparks and Howe is not nearly as stark as Sparks argues. Sparks is alleged to have entered the building *before* Howe, even as he faced pepper spray from an officer trying to prevent his advance. ECF No. 56 at 8–9. Once inside, while Howe went to the crypt, Sparks headed toward the Senate chamber. *Id.* at 9–10. And while Sparks is not accused of assaulting an officer or destroying property—as Howe is—Sparks allegedly formed part of the mob that chased Capitol Police Officer Eugene Goodman up a flight of stairs to within a few feet of the Senate chamber, while mob members yelled things like "[k]eep running, motherf*cker," and "[h]e's one

person, we're thousands." *Id.* at 9.  Sparks allegedly joined in, yelling, "This is our America! This is our America!," and pointing at the officers.  *Id.*

Thus, while the defendants' conduct is not identical, it is similar in kind, and hardly represents the kind of disparity that courts have found warrants severance.  The D.C. Circuit has explained that "severance is required when the evidence against one defendant is far more damaging than the evidence against the moving party."  *Moore*, 651 F.3d at 95 (quotations omitted).  The D.C. Circuit then explained, however, that "absent a *dramatic* disparity of evidence, any prejudice caused by joinder is best dealt with by instructions to the jury to give individual consideration to each defendant."  *Id.* (cleaned up).  The disparity in the evidence against Sparks and Howe is not dramatic enough to warrant severance, especially considering that at least some of the evidence against them appears materially identical and would be admissible in a case against one even if the Court severed the other for trial purposes.

Second, Sparks's and Howe's conduct is apparently well documented through photographic and video evidence.  Thus, the jury will have no issue discerning the conduct attributable to each defendant.  The D.C. Circuit has explained that in deciding whether to sever defendants the "critical determination" is "whether a jury could reasonably compartmentalize the evidence introduced against each individual defendant."  *United States v. Halliman*, 923 F.2d 873, 884 (D.C. Cir. 1991) (quotation omitted).  There is every reason to believe the jury will be able to do so here.

Finally, in other January 6–related cases, courts have rejected Sparks's arguments and refused to sever similarly situated defendants.  For example, in *United States v. McCaughey*, three defendants moved for severance because they feared that the "jury's revulsion" toward their co-defendants—who had sprayed officers with chemicals and struck officers with batons—would

6

"spill over into the jury's consideration of the movants' conduct." 605 F. Supp. 3d 84, 90 (D.D.C. 2022). Judge McFadden rejected that argument:

> Video cameras captured much of that day's events. Because each Defendant's actions are rendered on video, a jury need not "look beyond each defendant's own" actions to judge guilt or innocence. The risk of spillover prejudice is "minimal" in such a case, and any remaining prejudice is best addressed through a jury instruction, not severance under Rule 14(a).

*Id.* at 91 (citations omitted).

\*   \*   \*

In sum, Sparks has not satisfied his burden to show a risk of prejudice from being tried together with Howe that would warrant the extreme step of severance. And for whatever risk of prejudice may exist, a limiting instruction will suffice. In fact, Sparks has failed to cite a single case in which a court granted severance at all. He cites only three cases in his motion, and in each, the Supreme Court or the D.C. Circuit affirmed the trial court's *denial* of severance. ECF No. 52 at 3–4.

Thus, for all these reasons, it is hereby **ORDERED** that Sparks's Motion to Sever Defendants, ECF No. 52, is **DENIED**.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: May 9, 2023