UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-CR-87 (TJK) |
| : | |
| MICHAEL SPARKS, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S SECOND MOTION TO DISMISS COUNT ONE OF THE INDICTMENT OR STAY THE PROCEEDINGS**

For the second time, defendant Michael Sparks asks this Court to dismiss the count in the indictment charging him with obstruction of an official proceeding. ECF 84 (Def. Motion to Dismiss). This time, his argument is foreclosed not only by this Court's prior rulings, but by binding D.C. Circuit precedent. *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), *cert. granted* 23-5572. His motion to dismiss must be denied. And Sparks has not established good reasons to stay the proceedings in this case, in which he is charged not only with obstructing Congress but also with obstructing law enforcement officers during a civil disorder (a five-year felony) and four misdemeanor offenses. ECF 39 (Second Superseding Indictment). Trial—now scheduled to begin more than three years after Sparks's arrest—should proceed on February 26, 2024.

**FACTUAL BACKGROUND**

Sparks was the very first rioter to enter the U.S. Capitol building on January 6, 2021. Despite others' screams of "don't go in," Sparks climbed through the broken window next to the Senate Wing Door at approximately 2:13 pm. Once inside, he followed a group of men who chased a U.S. Capitol Police officer up a flight of stairs inside the Capitol building. Sparks followed the group pursuing the officer up the stairs, while the mob shouted at the officer.

Upstairs, the officer found backup, and several police officers assisted him and attempted to stop the group of rioters. The officers ordered the group to leave, but Sparks did not retreat. Instead, he walked to the front of the group and confronted the first officer they had chased up the stairs. He yelled, "This is our America! This is our America!," as he grew increasingly agitated.

Sparks did not find himself at the front of the mob by accident. In the days leading up to January 6, he posted to Parler, "we want a civil war to be clear." That very same day, he bought a 22-caliber heavy barreled semiautomatic rifle and a scope. On January 3, 2021, he posted to Facebook, "It's time to drag them out of Congress . It's tyranny[.]" Sparks was well-informed about Congress's plan to certify the votes of the electoral college on January 6, even posing the question to his Parler community, "If we have to have one person from the house to contest the electoral on the 6 th who will it be[?]" He spread the news to his Facebook friends that Donald Trump had a "Path to Victory, Starting Jan. 6[.]"

As the events of January 6 unfolded before the world, Sparks's involvement was prominent, and he quickly made the news. Individuals who knew him reported his activity to law enforcement. One reported that he or she was concerned about messages Sparks posted on Facebook after January 6, 2021. In one ominous message, Sparks warned, "A new dawn is coming. Be ready. Just pray and trust in the Lord." He claimed he was canceling his Facebook account and had "give[n] up on democracy." He warned readers to "be ready for a lot of big events. Have radios for power loss etc. Love every body[.]" As late as January 16, 2021, he posted to Facebook, "go ahead and start conditioning your self for trump 4 more years."

Sparks was arrested in late January 2021. On February 5, 2021, a grand jury returned an indictment charging Sparks with civil disorder, in violation of 18 U.S.C. § 231(a)(3); obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2); entering or remaining on restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); disorderly and disruptive

2

conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); impeding ingress and egress in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); violent entry and disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(A); disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D); impeding passage through the Capitol grounds or buildings, in violation of 40 U.S.C. § 5104(e)(2)(E); and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). ECF 5 (Indictment). On November 10, the grand jury returned a superseding indictment with the same counts. ECF 22 (First Superseding Indictment). On February 2, 2022, Sparks moved to dismiss Counts One and Two of the superseding indictment, ECF 26; this Court denied the motion, *see* Minute Order, Aug. 5. 2022. After investigators learned that Sparks had not acted alone but participated in the riot along with a coworker, Joseph Howe, a second superseding indictment was returned, charging both men. ECF 39 (Second Superseding Indictment). In that indictment, obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), became Count One. *Id.* On December 22, 2023, Sparks again moved to dismiss the obstruction charge (now Count One). ECF 84.

## ARGUMENT

Sparks's challenge to Count One (obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2)) lacks merit. The D.C. Circuit squarely addressed, and rejected, the very argument Sparks advances here. Moreover, there is no need to stay the proceedings in this case, which involves a host of charges that are distinct from the question now pending before the Supreme Court in another case.

I. **Count One Should Not Be Dismissed**

    A. **Legal Standard**

The main purpose of an indictment "is to inform the defendant of the nature of the

accusation against him." *United States v. Ballestas*, 795 F. 3d 138, 148–49 (D.C. Cir. 2015) (citation omitted). It need not contain all the facts the government will present to prove its case at trial, and "'no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.'" *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (quoting *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir.1989)).

If an indictment "fail[s] to state an offense," a defendant may move to dismiss that count before trial. Fed. R. Crim. P. 12(b)(3)(B). But dismissal should be granted "only in unusual circumstances." *Ballestas*, 795 F. 3d at 148 (internal quotation marks omitted). When considering a challenge to the indictment, "a district court is limited to reviewing the *face* of the indictment"; the Court must "presume the allegations [in the] indictment to be true." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (internal quotation marks omitted); *United States v. Safavian*, 429 F. Supp. 2d 156, 159 (D.D.C. 2006) (noting that a Rule 12(b)(3)(B) challenge is limited to the "four corners of the indictment").

An "indictment must be viewed as a whole" and the "allegations must be accepted as true" in determining if an offense has been properly alleged. *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.*

B.   **Sparks's Second Motion to Dismiss Fails**

Title 18, U.S. Code, Section 1512(c)(2) prohibits corruptly obstructing, influencing, or impeding any official proceeding. In his first motion, filed in 2022, Sparks argued that Congress's certification of the Electoral College vote on January 6, 2021, does not qualify as an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2) because it "was not related to the administration of justice before a tribunal" or "Congress's implied power of investigation in aid

4

of legislation." ECF 26, at 6.  That argument was rejected in this case, Min. Order, Aug. 5, 2022, and later by the D.C. Circuit in *Fischer* (an aspect of that ruling that is not under review).  64 F.4th at 342-43. Now, with no new facts or evidence, and with the D.C. Circuit having already addressed the claim, Sparks argues that the "obstruction" criminalized by the statute must occur "with regard to a document, record, or other object." ECF 84, at 5 (citing *United States v. Miller*, 589 F. Supp. 3d 60, 78 (D.D.C. 2022), *rev'd and remanded sub nom. Fischer*, 64 F.4th 329).[1]

      Sparks's motion is foreclosed by binding precedent.  In *Fischer*, the D.C. Circuit addressed whether Section 1512(c)(2) "'requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding.'"  64 F.4th at 334.  Because the indictments did not allege that the defendants "violated § 1512(c)(2) by committing obstructive acts related to 'a document, record, or other object,' the district court dismissed the § 1512(c)(2) counts." *Id.*  The D.C. Circuit reversed, holding § 1512(c)(2) "encompasses all forms of obstructive conduct, including… efforts to stop Congress from certifying the results of the 2020 presidential election." *Id.* at 335. The court concluded that, "[u]nder the most natural reading of the statute, § 1512(c)(2) applies to all forms of corrupt obstruction of an official proceeding, other than the conduct that is already covered by § 1512(c)(1)." *Id.* at 336 (concluding that this "broad interpretation of the statute— encompassing all forms of obstructive acts—is unambiguous and natural, as confirmed by the 'ordinary, contemporary, common meaning' of the provision's text and structure") (quoting

---

[1] Sparks's latest motion to dismiss should be rejected as untimely.  Pursuant to Rule 12(c)(3), this Court set deadlines for filing pretrial motions by February 4, 2022.  *See* Minute Entry, Nov. 9, 2021.  Sparks filed his motion to dismiss the obstruction count on February 2, 2022. ECF 26.  In that motion, he challenged other aspects of § 1512(c)(2)'s application to his case, and he had all the facts and evidence necessary to raise the argument he advances here.  He did not, and he has not "show[n] good cause" for why the Court should consider it now, as Rule 12(c)(3) requires.  *See United States v. Reynolds*, 300 F. Supp. 503, 506 (D.D.C. 1969) (denying untimely motion to dismiss where no good cause was shown).

5

*Perrin v. United States*, 444 U.S. 37, 42 (1979)).  This portion of the opinion was authored by Judge Pan and joined by Judge Walker, and thus constitutes *Fischer*'s binding holding.  *Fischer* thus confirms that the indictment in this case is sufficient notwithstanding the fact that it does not specify that any obstructive acts related to a document, record, or other object.  *See Fischer*, 64 F.4th at 332; *see also Puma*, 596 F. Supp. 3d at 106-08 ("In sum, Section 1512(c)(2) gives defendants fair warning in plain language that a crime will occur in a different ('otherwise') manner compared to § 1512(c)(1) if the defendant 'obstructs, influences, or impedes any official proceeding' without regard to whether the action relates to documents or records.") (citing *United States v. Caldwell*, 581 F. Supp. 3d 1, 21 (D.D.C. 2021)).

In addition to this clear precedent from the D.C. Circuit, this Court has already heard and rejected a nearly identical argument relating to the scope of conduct that falls under § 1512(c)(2).  *See United States v. Nordean*, 579 F.Supp. 3d 28 (2021).  In *Nordean*, the defendants—members of the Proud Boys who were charged with § 1512(c)(2) and many other offenses relating to their efforts to stop Congress's certification of the Electoral College vote on January 6, 2021—urged that the statute should be read as limited by the subsection before it, § 1512(c)(1).  In this way, they argued, it should cover only to actions that impair evidence, such as altering, destroying, mutilating, or concealing a record.  *Id.* at 43.  Foreshadowing the D.C. Circuit's opinion nearly two years later, this Court rejected the argument, instead finding that the statute "is plainly 'expansive' in scope" and "intended to target something different than…'simple document destruction.'"  *Id.* at 43-44 (citing *United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013)).  *Nordean* is in line with nearly every other court in this district in concluding that § 1512(c)(2) does not require that the defendant take any action with respect to a document.  *See Fischer*, 64 F.4th at 338 (noting that every district judge other than the judge presiding *Fischer* itself had concluded the same, often with "thorough and persuasive reasoning").  Sparks provides no

reason to disturb that sound conclusion, and his motion to dismiss must be denied.

## II. No Stay of the Proceedings is Warranted

Sparks next argues that, if Count One is not dismissed, he should nevertheless avoid trial in this six-count case because the Supreme Court's resolution of a single issue in a different case might impact the proceedings. ECF 84 at 6 (citing the granting of certiorari in *Fischer*, 64 F.4th 329, *cert. granted* 23-5572 (Dec. 13. 2023)). This argument, which speculates about the results of another case being heard by another court, must fail, and trial should commence on February 26, 2024.

### A. Legal Standard

There is no rule of criminal or appellate procedure that expressly provides authority to stay the trial in a criminal case. *Cf.*, *e.g.*, Fed. R. App. P. 8(c) ("Rule 38 of the Federal Rules of Criminal Procedure governs a stay in a criminal case."); Fed. R. Crim. P. 38(d), (e)(1) (authorizing, "*[i]f the defendant appeals*," a stay of probation or order of restitution) (emphasis added). A district court does have discretion to stay proceedings, but the "party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34, (2009) (citations omitted).

When evaluating whether the defendant has met that burden to issue a stay, "a court considers four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Nken*, 556 U.S. at 426 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The third and fourth factors "merge" when a party moves for a stay against the government. *Id.* at 435. A stay "'is not a matter of right, even if irreparable injury might otherwise result.'" *Id.* at 433 (quoting *Virginian Ry. Co. v. United States*, 272 U.S.

7

658, 672 (1926)). The party seeking the stay bears the burden of "mak[ing] out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936).

### B.   Sparks Has Not Satisfied the Stay Factors

All of the relevant factors weigh against Sparks's request to stay this trial.

First, the fact that the Supreme Court granted certiorari in *Fischer* does not establish that Sparks is likely to succeed on the merits of any challenge to his § 1512(c)(2) conviction. At this time, a panel of the D.C. Circuit, this Court, and every other district court judge but one has agreed with the government's interpretation of that statute. *See Fischer*, 64 F.4th at 338 ("Although the opinions of those district judges are not binding on us, the near unanimity of the rulings is striking, as well as the thorough and persuasive reasoning in the decisions… The district judge in the instant case stands alone in ruling that § 1512(c)(2) cannot reach the conduct of January 6 defendants."). In fact, "[t]he D.C. Circuit has now *twice* had the opportunity to consider application of the federal obstruction statute to the offense conduct charged in this case, and both times upheld such application." *United States v. Carnell*, Case No. 23-cr-139 (BAH), ECF 75 at 4 (Memorandum and Order, Jan. 4, 2023) (citing *United States v. Robertson*, 86 F.4th 355, 375 (D.C. Cir. 2023) (reaffirming *Fischer*'s "holding that 'otherwise . . . obstruct[ing], influenc[ing] or imped[ing]' an official proceeding under § 1512(c)(2) covers 'all forms of corrupt obstruction of an official proceeding.'" (quoting *Fischer*, 64 F.4th at 336))). The mere fact that the Supreme Court agreed to hear *Fischer* does not indicate that those opinions were wrongly decided. *See, e.g.*, *Heath v. Jones*, 941 F.2d 1126, 1131 (11th Cir. 1991) ("[T]he grant of certiorari does not necessarily indicate that the position advocated by Heath has any merit, only that it is an important question."). Moreover, one Circuit judge has explained how, even

8

were the Supreme Court to determine that § 1512(c)(2) requires that the obstructive acts "impair the integrity or availability of evidence" as did the dissenting opinion in *Fischer,* defendants who obstructed the January 6 certification could still be convicted because the counting of electoral votes is undoubtedly a proceeding that involved "the receipt, processing, and verification of evidence—" that is, the electoral college certificates from each state. *See Brock v. United States*, No. 23-3045 (D.C. Cir. May 25, 2023) (per curiam) (Millet, J., concurring, at 1-2).

Second, Sparks will not suffer any irreparable injury by proceeding to trial in February. Even were the Supreme Court to decide *Fischer* adversely to the government, it is not clear that the Court's interpretation of Section 1512(c)(2) would necessarily invalidate his conviction in this case. Moreover, obstruction of Congress is not Sparks's only charge.  Importantly, he faces an additional felony charge of obstructing law enforcement officers during a civil disorder, as well as four other charges relating to his disorderly and disruptive conduct at the U.S. Capitol on January 6.  And the evidence on those charges overlaps entirely with the evidence the government would use to prove the § 1512(c)(2) count.  Sparks has not pointed to any single piece of evidence that would be admitted at trial that would not be admissible were he facing trial only on Counts Two through Fourteen.

As Judge Howell recently recognized, a defendant is not "irreparably harmed without a stay" simply "because 'he will be forced to go to trial' before his appeal on violations of his constitutional rights is heard." *United States v. González-Valencia*, No. 16-65-1 (BAH), 2022 WL 3978185, at *6 (D.D.C. Sept. 1, 2022). That is why interlocutory appeals are allowed only in rare cases.

Sparks also would not suffer any irreparable injury because upon conviction, a sentencing hearing would likely not occur until near or after the time the Supreme Court decides *Fischer*, likely at the end of its term in June 2024.  Certainly, if convicted of the remaining charges,

9

Sparks is not likely to have finished serving any sentence on those charges before the *Fischer* ruling. If convicted of the § 1512(c)(2) charge, any potential injury to Sparks can be addressed through a motion for release pending appeal under 18 U.S.C. § 3143(b). Under that statute, a defendant who has been sentenced to a term of imprisonment may be released pending appeal if certain requirements are met, including that the appeal "raises a substantial question of fact or law likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(A)-(B). A "substantial question" is one that is "a close question or one that very well could be decided the other way." *United States v. Peholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987). Although the government would likely oppose such a motion (particularly if Sparks is convicted of the civil disorder felony under 18 U.S.C. § 231(a)(3)), the possibility for release pending appeal is another factor favoring denial of Sparks's motion. The Bail Reform Act—not a lengthy continuation of the proceedings—is the proper mechanism under which to address any potential prejudice to Sparks.

On the other hand, a stay would substantially injure the public interest in the resolution of this case. The public and the government have a right to resolution of *all* of Sparks's charges, not just the § 1512(c)(2) charge. It is unlikely that any decision in *Fischer* would be issued by the Supreme Court before the end of its term in June of 2024. That would be nearly three and a half years after the commission of the offenses with which Sparks is charged. A stay would risk irreparable harm to the government "because, as more time passes, the government's…evidence continues to age, which hurts witnesses' ability to recollect those events clearly at trial." *González-Valencia*, 2022 WL 3978185, at *7. Delaying the trial in this case for another several months or more would undermine the interests of the public in the timely adjudication of a case

of great significance.

It can take "a lot" of time to decide a case on appeal. *Nken*, 556 U.S. at 421 (cited by *Carnell*, 23-cr-139, ECF 75 at 3). If, during the nearly 16 months that appeals courts have been reviewing January 6 defendants' challenges to § 1512(c)(2), cases had been stayed while the D.C. Circuit deliberated, "a backlog of criminal cases would have been automatically created upon the issuance of rulings in *Fischer* and *Robertson*, upholding application of this federal obstruction statute to offense conduct at the U.S. Capitol on January 6, 2021, with obvious potential concomitant adverse effects on the congestion of all criminal cases on the dockets of every Judge on this Court." *Carnell*, 23-cr-139, ECF 75 at 3-4. Were every criminal case stayed while a potentially applicable issue was litigated on appeal in a separate case, the criminal justice system would grind to a halt. *Fischer* and other cases challenging the application of 18 U.S.C. § 1512(c)(2) have been pending for some time, and such developments did not previously merit a broad stay. Nothing has changed by virtue of the Supreme Court's decision to grant certiorari in *Fischer*.

Denying Sparks's request to stay would be in line with the recent decisions by several courts in this district in January 6 cases. In *Carnell*, Judge Howell denied the defendant's request to stay trial where the defendant was charged with § 1512(c)(2) and misdemeanor offenses, pointing out the strong interests of the government and the public in proceeding. 23-cr-138, ECF 75. In *United States v. Bennett*, Chief Judge Boasberg similarly denied a request to stay a January 6 defendant's trial on § 1512(c)(2) and misdemeanors because of "the length of time this case has been pending, the numerous other counts beyond Section 1512 he faces, and the fact that Defendant will not be sentenced (if at all) until after the Supreme Court decides *U.S. v. Fischer*[.]" Case No. 21-cr-312 (JEB), Minute Order (Dec. 28, 2023). In *United States v. Dunfee*, where the defendant, like Sparks, faces a § 231(a)(3) count in addition to several

11

misdemeanors, Judge Walton denied a stay of trial, noting that justice should not be further delayed particularly in light of the Supreme Court's guidance that "the people, the government, have a right to expeditious resolution of matters also." Case No. 23-cr-36 (RBW), ECF 59 (Order); Hearing Tr. (Dec. 14, 2023).  And in *United States v. Irwin, et al.*, Judge Moss denied a request to stay two co-defendants' January 6 trial, reportedly reasoning in part that it could take years to arrive at any certainty as to how appeals might resolve in similar or related cases.  Case No. 21-589 (RDM) (minute entry not yet available).  *See also United States v. Nichols*, Case No. 21-cr-117 (RCL) (D.D.C. Dec. 21, 2023) (denying motion to continue trial pending resolution of *Fischer*).

Because Sparks has not met his burden to establish that any of the stay factors favor a delay of his trial, and consistent with the weight of authority in the district, Sparks's request for a stay must be denied.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny Sparks's motion to dismiss and his request to stay the proceedings.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   /s/ *Emily W. Allen*
EMILY W. ALLEN, Cal. Bar No. 234961
SONIA MITTAL, Il. Bar No. 6314706
Assistant United States Attorneys
601 D Street NW
Washington, DC 20530
emily.allen@usdoj.gov
(907) 271-4724